J-A24036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NAADIR ABDUL-ALI | : | |
| | : | |
| Appellant | : | No. 1682 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010619-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| NAADIR ABDUL-ALI | : | |
| | : | |
| Appellant | : | No. 1683 EDA 2022 |

Appeal from the Judgment of Sentence Entered February 24, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010616-2016

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED FEBRUARY 29, 2024**

Naadir Abdul-Ali ("Abdul-Ali") appeals from the judgment of sentence following his convictions for rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI"), witness intimidation, aggravated assault, simple assault, and unlawful restraint.[1]  After careful review, we affirm.

---

[1] **See** 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 4952(a)(1), 2702(a), 2701(a), 2902(a)(1).

The facts recited by the trial court are as follows:

[E.M.], an 18 year-old female, was in a relationship with [Abdul-Ali], which started in late June or early July 2015. During the course of the relationship, [Abdul-Ali] became more and more possessive of [E.M.].

On August 22, 2015, [E.M.] told [Abdul-Ali] that she was going out with her mother and aunt, shortly before [Abdul-Ali] was about to leave on an extended trip. This failure to be available to him just before he left angered [Abdul-Ali]. [Abdul-Ali] reacted by verbally abusing [E.M.], saying he didn't want to be with her any more, and threatening to kill her. [E.M.] then got in the car, where [Abdul-Ali] continued to be verbally abusive, then took [E.M.'s] phone, attempted to delete his contacts and messages, and threw the phone at [E.M.]. [Abdul-Ali] then drove [E.M.] down the street to a CVS parking lot, where he told her he had a gun in the car and should shoot her and acted as though he had a gun in his pants, which object he then put to the back of her head.

[Abdul-Ali] then told [E.M.] to perform oral sex on him in his car, during which he Facetimed his friend, co-defendant Desmond [S.] Smith ["Smith"]. [Abdul-Ali] told Smith that they were going to meet him at Smith's home and that he should bring his father's gun. [Abdul-Ali] then drove [E.M.] to Smith's house.

At Smith's house, [Abdul-Ali] and Smith escorted [E.M.] to Smith's bedroom. When [E.M.] told [Abdul-Ali] that she did not want to go into the house, he told her to go in before he hit her.

In the bedroom, [Abdul-Ali] asked Smith for the gun, whereupon Smith gave him a bag. When [Abdul-Ali] briefly left the room, [E.M.] told Smith she didn't know what was going on, or why she had been brought there, but she didn't want to be there. [Abdul-Ali] returned to the room and ordered [E.M.] to remove her pants and told her to perform oral sex on Smith, as [Abdul-Ali] sat by the door with a gun he had removed from the bag Smith gave him. Smith then had vaginal intercourse with [E.M.], during which she told Smith she didn't want to have sex with him.

[Abdul-Ali] and Smith then alternately had oral, vaginal[,] and anal intercourse with [E.M.]. [Abdul-Ali] and Smith then had simultaneous intercourse with [E.M.], one anally and one vaginally. When asked if she wanted Smith to enter her anally, [E.M.] said no,

in response to which [Abdul-Ali] struck her[] before Smith then anally penetrated her. [E.M.] was crying the entire time from when she entered the house.

When Smith ejaculated first then left the room, [Abdul-Ali] became enraged with [E.M.] for allowing this to happen when she is his girlfriend. After [Abdul-Ali] ejaculated, he pointed the gun at [E.M.]'s head, then pointed it down her throat, telling her that if she tells anyone about what happened, he will injure her family. Frightened, [E.M.] did not tell anyone about what happened, and instead tried to convince [Abdul-Ali] of her love.

A month later on September 21, 2015, [Abdul-Ali] had returned from a trip, after which [he] and [E.M.] got married. A minor matter escalated into a fight, during which [Abdul-Ali] grabbed [E.M.], struck her with a closed fist, choked and kicked her, threw her into the bathtub and dragged her by her hair. [E.M.'s] lip was split and visibly swollen, and she had bruises.

Shortly after these events on September 23, 2015, [Abdul-Ali] left [E.M.] alone, whereupon she called her mother asking that she pick up her and her young son and take them home. [E.M.] told her mother that [Abdul-Ali] had a gun, and that she had been raped by [Abdul-Ali] and someone else, and that [Abdul-Ali] had struck her. Her mother picked up [E.M.] and her young son[] and drove her to the family home in Lower Merion, Montgomery County, to drop off the child along with [E.M.'s] father. [E.M.'s] mother then took her to the hospital to seek medical treatment for the injuries inflicted by [Abdul-Ali]. [E.M.] did not tell the hospital staff about assaults by [Abdul-Ali] because she was afraid and thought she would not be believed.

Unable to accept that [E.M.] had left him, [Abdul-Ali] continued to contact her by phone and text message, alternately threatening her and professing his love, as he attempted to get her to return. On September 27, 2015, masked men broke into the family home in Lower Merion and murdered [E.M.'s] father. [Abdul-Ali] and Smith were ultimately arrested for that crime in Montgomery County. Smith was acquitted and [Abdul-Ali] was convicted [of second-degree murder].

The evidence also included a redacted version of [] Smith's statement to police. In that statement Smith admitted to having sex with [E.M.].

Trial Court Opinion, 12/15/22, at 2-5 (record citations omitted).

Prior to Abdul-Ali's and Smith's joint trial for rape and related offenses, the Commonwealth sought the admission of evidence of the murder of E.M.'s father and Abdul-Ali's conviction for that crime to establish the history of the case, and Abdul-Ali's motive and consciousness of guilt, and to rebut the lack of prompt complaint of the rape, which E.M. did not report until after the murder. **See** Commonwealth's 404(b) Motion, 6/27/18, at 2-7 (unnumbered); N.T., 8/9/18, at 3-4.

Abdul-Ali objected to the admission of the other crimes evidence and requested a separate trial because a joint trial would result in the admission of Smith's statement concerning the murder that referred to "the other guy," which would contextually implicate him. **See** N.T., 8/9/18, at 9-10.[2] He argued knowing he was convicted of the murder would incline the factfinder to convict him of the rape. He also suggested the rape could not have been a motive for the homicide because it was not disclosed until **after** the killing. **See id**. Abdul-Ali also asserted a joint trial would prevent him from introducing exculpatory evidence – friends of Smith's who would testify in his favor if the cases were

_____

[2] Co-defendant Smith did not object to introduction of evidence concerning the murder and argued that **not** admitting his police statement might violate his constitutional rights. **See** N.T., 8/9/18, at 8.

severed but not if they were jointly tried. *See* Abdul-Ali's Motion to Sever, 3/17/18, at 4-6. The court granted the other crimes motion and denied the severance motion without further discussion. *See id*. at 10.

At trial, the jury convicted Abdul-Ali of the above-listed offenses. The court imposed an aggregate sentence of thirty-to-sixty years of imprisonment for Abdul-Ali's convictions. Abdul-Ali filed post-sentence motions, which the court denied. Abdul and the trial court complied with Pa.R.A.P. 1925.

On appeal, Abdul-Ali raises the following issues for our review:

I.      Whether the trial court erred in denying the motion to sever where the denial of severance prejudiced [Abdul-Ali] in that the jury heard the co-defendant's effectively unredacted confession which incriminated [Abdul-Ali], learned that [Abdul-Ali] had been convicted in another case and the co-defendant had not, and heard that [Abdul-Ali] did not have good character but the co-defendant did?

II.     Whether the trial court erred in admitting evidence that [Abdul-Ali] was convicted of the murder of [E.M.'s] father where the murder took place about a month after the alleged sexual assault in this case and had nothing to do with this incident because the evidence was irrelevant and unfairly prejudicial to [Abdul-Ali]?

III.    Whether sufficient evidence existed to support a conviction for aggravated assault where [Abdul-Ali], who was a professional boxer, did not cause serious bodily injury given that [E.M.'s] injuries consisted of bruising to her lip and a sprain and [Abdul-Ali's] actions consisted of punching her, pushing her, and briefly choking her?

Abdul-Ali's Brief at 9 (issues reordered).

Abdul-Ali's first issue addresses the court's denial of his severance motion.

A motion for severance is addressed to the sound discretion of the trial court . . . and . . . its decision will not be disturbed absent a manifest abuse of discretion. The critical consideration is whether [the] appellant was prejudiced by the trial court's decision not to

sever. [The a]ppellant bears the burden of establishing such prejudice.

*Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278 1282 (Pa. Super. 2004) (*en banc*) (internal citations and quotation marks omitted). Pennsylvania Rule of Criminal Procedure 583, addressing severance, provides as follows:

> The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583.

The Confrontation Clause guarantees a criminal defendant the right to be confronted with the witnesses against him. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987). Ordinarily a witness whose testimony is introduced at a joint trial is not considered a witness "against" a defendant if the jury is instructed to consider the testimony only against a co-defendant. *See id*. In *United States v. Bruton*, 391 U.S. 123 (1968), the United States Supreme Court recognized that where a non-testifying co-defendant's confession directly and powerfully implicates the defendant, a cautionary instruction is insufficient to protect the defendant's constitutional rights*. See id*. at 136-37.

The Supreme Court has declined to extend *Bruton* to confessions that do not name the defendant, thereby rejecting contextual implication as a bar to the admission of a non-testifying co-defendant's statement. *See Richardson*, 481 U.S. at 211. *Accord Commonwealth v. Epps*, 240 A.3d 640, 650 (Pa. Super. 2020) (finding no *Bruton* violation where non-testifying co-defendant's statement was redacted to refer to "the other guy" and the trial court issued an

appropriate cautionary instruction).  Although the Supreme Court later held that certain obvious redactions, like the substitution of "X", "blank", or "deleted", are directly accusatory, *see Gray v. Maryland*, 523 U.S. 185 (1998), no case "provides license to flyspeck trial transcripts in search of evidence that could give rise to a collateral inference that the defendant had been named in an altered confession." *Samia v. United States*, 599 U.S. 635, 653 (2023).  Thus, where a non-testifying co-defendant's statement is redacted to refer to the "other person", it falls outside of the narrow exception to the admission of redacted non-testifying co-defendant's statements.  *Id*.[3]

Abdul-Ali asserts that non-testifying co-defendant Smith's statement contextually implicated him in the rape.  He states the Third Circuit has rejected a blanket rule barring *Bruton* relief where contextual implication occurs, and replacing a defendant's name with obvious symbols of deletion fails to satisfy *Gray*.  He asserts it was "overwhelmingly obvious" that he was "the other guy" referred to in Smith's statement.

---

[3] In declining to expand the narrow limits of *Bruton*, the *Samia* Court declared that such an expansion would work "an unnecessary and imprudent change in law" and would require "extensive pretrial hearings to determine whether the jury could infer from the Government's case in its entirety that that the defendant has been named in an altered confession." *See id*. at 654.  In the Court's view, such hearings would be too high a price to pay and would defeat the many benefits of joint trials, including preserving government resources and protecting victims from repeatedly having to relive trauma. *See id*.  Thus, where a non-testifying co-defendant's statement does not implicate the defendant and is the subject of a proper limited instruction, the admission of the statement does not affront the Confrontation Clause. *See id*. at 655.

The trial court found the redaction of Smith's statement complied with the law and noted the jury was instructed to consider the statement only against Smith. *See* Trial Court Opinion, 12/15/22, at 7-8; N.T., 12/20/18, 119.[4]

We find no error in the court's ruling. As Abdul-Ali's counsel frankly admitted at oral argument, in **Samia**, the United States Supreme Court emphatically reaffirmed that contextual implication is not a basis for **Bruton** relief where the court gives a limiting instruction that the non-testifying co-defendant's statement cannot be used against his co-defendant. **See Samia**, 599 U.S. at 653-55.

Abdul-Ali also contends that failure to sever co-defendant's trial led to disclosure of his murder conviction and highlighted Smith's introduction of character evidence, which was detrimental to Abdul-Ali's character. However, Abdul-Ali fails to cite legal authority supporting his assertions that the jury should not have heard Smith was acquitted of the murder while he was convicted, and that he was deprived of the opportunity to introduce good character evidence. **See id**. at 40. He also fails to state the nature of the character evidence he could have introduced at trial, whether tried jointly or individually. Regardless, he fails to sight any legal authority indicating a trial court should sever co-defendants when one defendant can offer character evidence and the other defendant

_____

[4] Abdul-Ali did not request a more specific instruction at the time Smith's statement was introduced or during the trial court's closing instruction. Further, although Abdul-Ali says the court's instruction was deficient, he does so in a single sentence. **See** Abdul-Ali's Brief at 39-40.

cannot. Under Pa.R.A.P. 2119(a), an appellant's argument shall be followed by discussion and citation of pertinent authorities. *See **Commonwealth v. Fletcher***, 986 A.2d 759, 784-85 (Pa. 2009) (indicating a claim is waived where appellant fails to cite pertinent authority or provide relevant detail in his brief); ***Commonwealth v. Armolt***, 294 A.3d 364, 377 (Pa. 2023) (court will not develop an argument for a party). It is not this Court's responsibility to become counsel for appellant and develop arguments on an appellant's behalf or look through the record seeking facts to support claims in the brief. ***Commonwealth v. Samuel,*** 102 A.3d 1001, 1005 (Pa.Super. 2014). Thus, Abduli-Ali's argument is waived.

Abdul-Ali's second claim asserts the improper admission of other crimes evidence, namely his conviction for the murder of E.M.'s father. *See* Abdul-Ali's Brief at 45-52.

The admission of evidence is within a trial court's sound discretion and will only be reversed where the court clearly abuses that discretion. *See **Commonwealth v. Wilson***, 273 A.3d 13, 19 (Pa. Super. 2022). An abuse of discretion occurs only where the judgment is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Id*. (internal citation omitted). It is not enough to persuade an appellate court that it would have reached a different result; an appellant must show that the trial court abused its discretionary power. *See **Commonwealth v. Norton***, 201 A.3d 112, 120 (Pa. 2019).

This Court has set forth a non-exclusive list of circumstances where a defendant's prior bad acts are admissible at trial:

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. [*See*] Pa.R.E. 404(b(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. [*See*] Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

*Commonwealth v. Windslowe*, 158 A.3d 698, 713 (Pa. Super 2017) (some internal citations omitted).

Lack of prompt complaint is "an important and relevant factor for jurors to consider in sexual assault cases." *Commonwealth v. Lane*, 555 A.2d 1246, 1250-51 (Pa. 1989). The lack of prompt complaint raises a credibility issue. *See Commonwealth v. Dillon*, 925 A.2d 131, 137 (Pa. 2007). Evidence of prior abuse that delays reporting of rape is admissible in the Commonwealth's case-in-chief. *See id*. at 139-141. Rule 404(b) does not distinguish between prior and subsequent acts. *See Commonwealth v. Wattley*, 880 A.2d 682, 685 (Pa. 2005) (quoting Ohlbaum on the Pennsylvania Rules of Evidence, §4041.16 (2004-2005 ed.) ("crimes, wrongs, or acts that occur after the offense for which the accused is on trial may also be admitted").

Abdul-Ali asserts the evidence concerning his conviction for the murder of E.M.'s father was not admissible as evidence of the history of the case, motive, consciousness of guilt, or to rebut an argument regarding prompt complaint. He

states murder is not part of the history of the rape case because it occurred afterward. He further asserts the murder was not evidence of consciousness of guilt or motive because it did not establish any motive to kill E.M.'s father to avoid prosecution and was not admissible to rebut the absence of prompt complaint because the murder did not explain E.M.'s delay in reporting the rape. He also asserts the prejudice from the evidence greatly outweighed its probative value.

The trial court found evidence of the murder admissible to show the history of the events, and as evidence of consciousness of guilt and motive. **See** Trial Court Opinion, 12/15/22, at 5-6, citing, *inter alia*, **Commonwealth v. Flamer**, 53 A.3d 82 (Pa. Super. 2012) (finding evidence co-defendants conspired to kill a witness to a previously-committed murder admissible at their murder trial to show history of the case and consciousness of guilt); **see also Commonwealth v. Johnson**, 668 A.2d 97, 104 (Pa. 1995) (finding attempts to intimidate or influence witnesses admissible as evidence of consciousness of guilt). The trial court also found the proffered evidence relevant to explain E.M.'s delay in reporting the rape. **See** Trial Court Opinion, 12/15/22, at 6.

We do not find error in the court's ruling admitting the other crimes evidence and agree with the court that **Flamer** and **Johnson** support its ruling. We also agree the subsequent murder was relevant to E.M.'s lack of prompt complaint. We note the testimony shows that on the day of the murder, Abdul-Ali called E.M. and said, "Remember what I said, you know, if you leave me,

somebody got to go." **See** N.T., 12/18/18, at 166-67. We also find the evidence relevant because during his cross-examination of E.M., Abdul-Ali's counsel questioned her about her lack of prompt complaint. **See** N.T. 112/19/18, at 83-85 (questioning E.M. about whether she reported the rape at the hospital or told her mother about it).[5] The evidence showed Abdul-Ali threatened E.M. to hurt her and her family if she disclosed the rape or assaults. **See** N.T. 12/18/18, 134-37. He also told her that if she left him, "somebody got to go." **See id**. at 166-67. He then carried out those threats by killing her father. That evidence refuted Abdul-Ali's claim of E.M.'s lack of prompt complaint. **See Dillon**, 925 A.2d at 139.

Abdul-Ali's final issue asserts the evidence was insufficient to sustain his conviction of aggravated assault. **See** Abdul-Ali's Brief at 45-52.

A determination of evidentiary sufficiency presents a question of law. As such, this Court's standard of review is *de novo*. **See Commonwealth v. Berrios**, 297 A.3d 798, 803 (Pa. Super. 2023). Our scope of review is limited to considering the evidence of record, viewed in the light most favorable to the Commonwealth as the verdict winner. **See id**. When viewing the evidence in that light, an appellate court determines whether the evidence and all reasonable inferences therefrom is sufficient to establish every element of the offense

_____

[5] **See also** N.T. 12/20/18, at 79-80 (Abdul-Ali's counsel asserts in closing argument that the lack of prompt complaint undermines the Commonwealth's case).

beyond a reasonable doubt. **See Commonwealth v. Haney**, 131 A.3d 24, 33 (Pa. 2015). "The evidence at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder." **Commonwealth v. Mobley**, 14 A.3d 887, 890 (Pa. Super. 2011). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence. **See Commonwealth v. Williams**, 255 A.3d 565, 578 (Pa. Super. 2021).

A person is guilty of aggravated assault if he, *inter alia*, attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life. **See** 18 Pa.C.S.A. §2702(a)(1). Serious bodily injury is defined as injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." **See** 18 Pa.C.S.A. § 2301.

Where a victim does not sustain serious bodily injury, aggravated assault is only proved where the evidence demonstrates an attempt to cause serious bodily injury ("SBI") with the intent to do so. **See Commonwealth v. Martuscelli**, 54 A.3d 940, 948 (Pa. Super. 2012). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." **See** 18 Pa.C.S.A. § 901(a). The intent to cause SBI may be proved with direct or circumstantial

evidence, *see Commonwealth v. Matthew*, 909 A.2d 1254, 1257-58 (Pa. 2006), and is a fact-specific inquiry, *see Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2018).

Abdul-Ali asserts E.M. only testified he inflicted minor bruises and even a punch to the head does not normally demonstrate an intent to cause serious bodily injury. He asserts punching E.M. in the lip, grabbing her by the hair, pushing her around, and choking her briefly, "if true" does not show the intent to cause SBI, because he could have easily hurt her if he wanted to. *See* Abdul-Ali's Brief at 41-45.

The trial court stated Abdul-Ali had previously threatened to kill E.M. and his actions established his intent to cause SBI. *See* Trial Court Opinion, 12/15/22, at 10-11.

Viewing the evidence and all reasonable inferences in the light most favorable to the Commonwealth, we find the evidence sufficient to sustain Abdul-Ali's conviction of aggravated assault. The evidence shows Abdul-Ali, a boxer, punched the victim more than five times in the face, threw her in the bathtub, choked her preventing her from breathing, grabbed her by her hair, and pulled her upstairs and back into the bathroom when she briefly escaped. *See* N.T., 12/18/18, at 147-51. Further, days after the attack, the victim had a "busted" lip, jaw soreness, bruised ribs, and a high level of pain. *See* N.T. 12/19/18, 81-90. The extensive physical abuse, coupled with Abdul-Ali's threats to kill E.M.,

was sufficient evidence for a jury to find Abdul-Ali attempted to cause serious bodily injury to E.M. *See Matthew*, 909 A.2d at 1257-58.

Thus, we find no merit to Abdul-Ali's claims and affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/29/2024