J-S12007-23

2023 PA Super 110

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                          :        PENNSYLVANIA
                    v.                    :
                                          :
ELISABELL V. BERRIOS                      :
                                          :
              Appellant                   :   No. 1094 MDA 2022

Appeal from the Judgment of Sentence Entered June 17, 2022,
in the Court of Common Pleas of Lancaster County,
Criminal Division at No(s): CP-36-CR-0000298-2022.

BEFORE: KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:                  **FILED: JUNE 20, 2023**

Elisabell V. Berrios appeals from the judgment of sentence imposing two to twelve months' incarceration after a jury convicted her of open lewdness.[1] Because Berrios exposed her breasts to inmates at a county jail from the street below their cell windows, her public, sexually explicit misconduct violated the open-lewdness statute. Additionally, the language of that statute withstands Berrios' constitutional challenge for vagueness, and we affirm.

Around 10:10 p.m. on September 16, 2021, Berrios drove her car to Lancaster County's jail, where her boyfriend, Fermina Vega, was incarcerated. The jail is in a residential neighborhood of Lancaster. She parked on the side of the street opposite the jail. Berrios' best friend and her two daughters (ages eight and twelve) accompanied her in the vehicle. The daughters exited the vehicle and began playing around the car.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 5901.

At 10:12 p.m., Vega called Berrios from an app on a jail-provided tablet. The jail's IT department automatically recorded the call. **See** N.T., 6/13/22, at 94-95; **see also** Commonwealth's Ex. 5. Vega and Berrios' began a sexual conversation, while Berrios climbed on the hood of her car. **See id.** Berrios laid with her back against the car's windshield and continued to converse with Vega. The call lasted over 14 minutes.

A guard, performing a perimeter check, heard children laughing and making playing sounds, which struck him as odd for that time of night. He also heard the voices of the inmates drifting down from their windows. They were yelling and "getting riled up." **Id.** at 83-84.

The guard rounded a corner of the jail and saw Berrios lying on the car, with a phone in her right hand. With her left hand, she pulled down the top of her shirt to expose "her entire breast." **Id.** 71. At first, this only exposed one breast, but, as the guard watched, "she moved it over, and [he] saw her other breast in its entirety, as well." **Id.** at 72.

The guard then radioed his supervisor and called county dispatch. He remained in the vicinity and activated his body camera while waiting for law enforcement. **See** Commonwealth's Ex. 2. Despite knowing the guard was present and observing her, Berrios exposed her breasts "at least two, if not more" times. N.T., 6/13/22, at 79.

Soon, four local police officers arrived. One of the officers walked over to Berrios, who was still lounging on her windshield. The officer informed her

that they had received a call concerning "a female on top of a hood, exposing herself to the inmates of the prison." Commonwealth Ex. 7 at 1:07.

Berrios stated, "Exposing myself? . . . I mean, if showing my stomach is exposing myself, officer, then - - I'm guilty." *Id.* at 1:14.

"I wasn't here; I didn't see it. This is being reported," the officer said. *Id.* at 1:22.

"Okay. Then it's basically a he-said-she-said . . . I mean, if showing my shoulders and showing my stomach is - - is - - then I'm guilty," Berrios replied. *Id.* at 1:25.

Shortly after interacting with Berrios, the police left the scene. Three weeks later, they charged her with open lewdness and other offenses not at issue in this appeal.[2]

Berrios filed a pretrial motion to quash the open-lewdness charge. She asserted that the "statute proscribing open lewdness, 18 Pa.C.S.A. § 5901, is so vague as to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Motion to Quash at 1. The trial court denied Berrios' motion, and the matter proceeded to trial.

The jury only convicted Berrios of open lewdness. The court sentenced Berrios as described above, and she filed post-sentence motions, which were denied. This timely appeal followed.

---

[2] *See* 18 Pa.C.S.A. §§ 4304(a)(1) (endangering the welfare of children) and 5503(a)(4) (disorderly conduct).

Berrios raises three issues, which we have reordered as follows for ease of disposition:

> 1. [Whether] the evidence . . . was insufficient to prove [Berrios'] guilt beyond a reasonable doubt of open lewdness?
>
> 2. [Whether] 18 Pa.C.S.A. § 5901 is void for vagueness?
>
> 3. Did the [trial] court . . . abuse its discretion in fashioning [Berrios'] sentence by relying on improper factors?

Berrios' Brief at 17.

## 1. Sufficient Evidence of Lewdness

First, we consider Berrios' challenge to the sufficiency of the evidence. She argues that exposing the female breast is not "lewd" as that word is used within the open-lewdness statute. Berrios observes that no appellate court in Pennsylvania has held exposing female breasts in public constitutes open lewdness. She contends the statute is reserved for public displays of the genitalia. *See id.* at 35.

Alternatively, Berrios claims that the evidence did not prove beyond a reasonable doubt that she actually exposed her breasts below the top of the nipple. *See id.* at 39. She believes that the jury could not reasonably find that she revealed her nipple from the guard's testimony that she exposed her "entire breast." *Id.* at 40.

When reviewing a claim that the evidence does not sufficiently support a conviction, "our standard of review is *de novo*; however, our scope of review

is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Commonwealth v. Rushing*, 99 A.3d 416, 420–21 (Pa. 2014). "The test for the sufficiency of the evidence in a criminal case is whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt." *Commonwealth v. Williams*, 574 A.2d 1161, 1162 (Pa. Super. 1990).

Here, the jury convicted Berrios of open lewdness. A person commits that crime "if [s]he does any lewd act which [s]he knows is likely to be observed by others who would be affronted or alarmed." 18 Pa.C.S.A. § 5901. Berrios has limited her appellate argument to the phrase "lewd act" and contends that the exposing of the female breasts in public is not lewd.

There are certainly circumstances where that statement is true. For example, our General Assembly has explicitly excluded breastfeeding an infant from criminality under the Health and Safety Code. The legislature provided that, "The act of breastfeeding shall not be considered (1) Indecent exposure as defined in 18 Pa.C.S.A. § 3127[;] (2) Open lewdness as defined in 18 Pa.C.S.A. § 5901[;] (3) Obscenity or sexual conduct as defined in 18 Pa.C.S.A. § 5903[; or] (4) A nuisance as defined in 18 Pa.C.S.A. § 6504 . . . ." 35 P.S. § 636.4.

Clearly, the legislature found it necessary to exclude breastfeeding from the reach of the open-lewdness statute. The enactment of such an exception strongly indicates a legislative intent that the exposure of the female breast,

and the nipple with which one breastfeeds, falls within the scope of the conduct that Section 5901 of the Crimes Code forbids. Otherwise, the General Assembly would have had no need to enact 35 P.S. § 636.4(2) to exempt breastfeeding from the open-lewdness statute.

Under the Pennsylvania Rules of Statutory Construction, we may not interpret 18 Pa.C.S.A. § 5901 so narrowly as to render 35 P.S. § 636.4(2) meaningless, because "Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S.A. § 1921(a). Given that the legislature enacted 35 P.S. § 636.4(2) specifically to exclude the exposure of the nipple for breastfeeding from criminality under 18 Pa.C.S.A. § 5901, we infer that the General Assembly intended the exposure of the nipple to constitute open lewdness, at least in certain circumstances.

While there may be circumstances, other than breastfeeding, where the public exposure of a female's entire breast does not amount to open lewdness, like the trial court, we hold that this case is a circumstance in which the General Assembly intended to ban the exposure of a female's nipples from public view.

At common law, the crime of open lewdness "was defined as an act of gross and open indecency which tends to corrupt the morals of the community." *Commonwealth v. Heinbaugh*, 354 A.2d 244, 247 (Pa. 1976) (citing *Winters v. New York*, 333 U.S. 507, 515 (1948); *Commonwealth v. Sharpless*, 2 Serg. & R. 91, 100 (Pa. 1815); IV BLACKSTONE'S COMMENTARIES ON THE COMMON LAW 64 n. 38 (W. Lewis ed. 1898); 53 C.J.S. Lewdness, p. 4

(1948)). Our General Assembly codified the common-law offense with minor alterations in the language but with "no difference in meaning." *Id.* Thus, 18 Pa.C.S.A. § 5901 "must be read as restating the established, common-law standard which has long existed in this Commonwealth." *Id.*

Subsequent to *Heinbaugh*, and building upon its jurisprudence, this Court faced a sufficiency-of-the-evidence claim regarding the open-lewdness statute in *Williams*, *supra*. There, a man was convicted of open lewdness for walking around an apartment parking lot while wearing only a T-shirt and tight underwear.

We indicated that all "the reported Pennsylvania cases on open lewdness involved public masturbation or public displays of genitalia." *Williams*, 574 A.2d at 1163. In overturning the conviction, this Court held that 18 Pa.C.S.A. § 5901 "extends only to conduct that: 1) involves public nudity or public sexuality, and 2) represents such a gross departure from accepted community standards as to rise to the level of criminal liability." *Id.* Because Williams' conduct involved neither public nudity nor public sexuality, the evidence was insufficient to convict him of open lewdness.

Here, unlike in *Williams*, the conduct of Berrios was overtly sexual in nature. She received a call from her boyfriend, an inmate in the county jail and they had a nearly 15-minute conversation that was sexually explicit. They discussed his ability to see her exposing her entire breast to him and the other inmates housed on that side of the jail. Thus, Berrios' conduct involved a public display of sexuality, even though it did not involve her genitals. The

clear purpose of Berrios displaying her breasts to the jail was to stimulate Vega's lustful interests. And, based on the response of the other inmates, it was clear to Berrios and the guard that she was riling them up, as well. Berrios displayed her entire breasts to the inmates for a sexual purpose. Therefore, her conduct was a "lewd act," as that term is used in Section 5901 of the Crimes Code.

Also, her claim that the Commonwealth offered insufficient evidence that she exposed her nipples is unavailing. The guard testified that she exposed her "entire breast" to the inmates on a public street, in the middle of residential neighborhood of Lancaster. N.T., 6/13/22, at 71.

From this testimony alone, the jury could reasonably find that Berrios completely uncovered both of her breasts, which, as matter of basic anatomy, included her nipples. Berrios' insistence that the Commonwealth needed to provide specifics of what parts of her breasts made up her "entire breast" is absurd.

The first appellate issue affords Berrios no relief.

## 2. Constitutional Challenge Vagueness

Next, we address Berrios' constitutional challenge to the statute.

She argues that the language of 18 Pa.C.S.A. § 5901 is so vague that to sustain her conviction violates the Due Process Clause of the Fourteenth Amendment to the federal constitution. Berrios contends "women of common intelligence must necessarily guess at [the statute's] meaning and differ as to

- 8 -

its application."  Berrios' Brief at 26 (quoting **Connally v. General Const. Co.**, 269 U.S. 385, 391 (1926)) (some punctuation omitted).

Furthermore, she relies upon **Free the Nipple-Fort Collins v. City of Fort Collins, Colorado**, 916 F.3d 792, 795 (10th Cir. 2019).  There, the United States Court of Appeals for the Tenth Circuit affirmed a district court's preliminary injunction, barring enforcement of an ordinance that made it illegal for females to expose their breasts in public.  The court's decision rested on the Equal Protection Clause of the Fourteenth Amendment.  Because the Equal Protection Clause applies nationwide, Berrios argues "it strains credulity that the language of Section 5901 could be deemed sufficiently definite to have notified [her] that the conduct that Commonwealth proved at trial would make her guilty of this crime."  Berrios' Brief at 26-27.

Finally, she contends the common law, upon which the legislature based Section 5901, provided her with no notice that exposing her breast in public was illegal.  Citing a litany of cases involving men whom the Commonwealth has tried for open lewdness, Berrios asserts that she could find only one case where a woman faced such a charge, **Commonwealth v. Brewington**, 2015 WL 6828138 at *2 (Pa. Super. 2015) (non-precedential decision).[3]  The defendant in that case pleaded guilty to open lewdness for running fully naked through a large picnic.  Because she found no case where a woman was

_____

[3] We note that Berrios' decision to include **Commonwealth v. Brewington**, 2015 WL 6828138 (Pa. Super. 2015) (non-precedential decision), in her brief violates the Pennsylvania Rules of Appellate Procedure, because this Court decided it prior to May 2, 2109.  **See** Pa.R.A.P. 126.

- 9 -

convicted for only exposing her breasts, Berrios believes her conviction under Section 5901 "falls outside notions of fair play and settled rules of law." Berrios' Brief at 32 (quoting **Connally**, 269 U.S. 391).

We begin by asking whether Berrios waived her Equal Protection Clause argument, based on **Free the Nipple**, **supra**. "The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." **Trigg v. Children's Hosp. of Pittsburgh of UPMC**, 229 A.3d 260, 269 (Pa. 2020).

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Indeed, "issues, even those of constitutional dimension, are waived if not raised in the trial court. A new and different theory of relief may not be successfully advanced for the first time on appeal." **Commonwealth v. Pi Delta Psi, Inc.**, 211 A.3d 875, 884 (Pa. Super. 2019), *appeal denied*, 211 A.3d 644 (Pa. 2019).

Here, Berrios filed a pretrial motion to quash the count of open lewdness and only asserted that the language of 18 Pa.C.S.A. § 5901 violated the Due Process Clause of the Fourth Amendment. **See** Motion to Quash at 1. She did not assert in the trial court that that statute, if applied to prohibit the public of exposure of female breasts but not the public exposure of male chests, would violate the Equal Protection Clause.

Under the Fourteenth Amendment to the Constitution of the United States:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amnd. XIV, § 1.

Although the two Clauses appear consecutively in the amendment, the Due Process Clause and the Equal Protection Clause give rise to different constitutional analyses. While similar in aim and scope, their protections and jurisprudence are not to be conflated. As the Supreme Court of the United States has explained, the "'equal protection of the laws' is a more explicit safeguard of prohibited unfairness than 'due process of law,' and, therefore, we do not imply that the two are always interchangeable phrases." *Bolling v. Sharpe*, 347 U.S. 497, 499, (1954), *supplemented sub nom. Brown v. Board of Educ. of Topeka, Kan.*, 349 U.S. 294, (1955).

Here, the two clauses are not interchangeable, because Berrios' Equal Protection claim is an assertion that the Commonwealth's application of Section 5901 to her is rooted in a discriminatory classification of women. She claims that Section 5901 would not be applied to prohibit men from exposing their chests in public. Thus, Berrios alleges that Pennsylvania's application of Section 5901 to her conduct discriminates on the basis of her sex.

However, the constitutional challenge that she raised in the trial court focused solely upon vagueness. This is a purely Due Process challenge, with no connection to concepts of gender-based discrimination.

Thus, we conclude that Berrios' Equal Protection challenge is not interchangeable with her Due Process challenge that she raised below. Accordingly, we dismiss her Equal Protection challenge as waived under Pa.R.A.P. 302(a). This Court reserves for a future day the question of whether convicting a woman for exposing her breasts in public is discrimination on the basis of sex in violation of the Equal Protection Clause.[4]

We now turn to the Due Process challenge that Berrios preserved for our review: namely, that the language of Section 5901 is so vague that it provided her no notice that exposing her entire breasts in public was illegal.

"As the constitutionality of a statute presents a pure question of law, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Brooker***, 103 A.3d 325, 334 (Pa. Super. 2014).

When considering a constitutional challenge for vagueness "Absent the assertion of an infringement of First Amendment freedoms, the specificity of a statute must be measured against the conduct in which the party challenging the statute has engaged." ***Heinbaugh***, 354 A.2d at 245 (footnote omitted). In other words, Berrios asserts an as-applied challenge to the statute, rather than a facial one.

"A criminal statute must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction." ***Id.*** at 246.

_____

[4] Furthermore, Berrios made no claim of heightened protections under the Constitution of the Commonwealth of Pennsylvania. ***See Commonwealth v. Edmunds***, 586 A.2d 887 (Pa. 1991). Hence, we limit our decision to the federal constitution.

"Statutes which are so vague that they fail to provide such notice violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Id.* "The fact that the legislature might without difficulty have chosen clear and more precise language equally capable of achieving the end which it sought does not mean that the statute which it in fact drafted is unconstitutionally vague." *Id.* (some punctuation omitted). "Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." *Id.*

In *Heinbaugh*, the Supreme Court of Pennsylvania rejected a Due Process challenge to Section 5901 based on vagueness. There, a man faced a charge of open lewdness, because he "did expose and exhibit his genital organs in a lewd manner openly in a certain place situate at the Kroger parking lot . . . [and] was masturbating in plain view." *Id.* 245 n.2. The trial court quashed the indictment due to vagueness, and the Commonwealth appealed.

Reversing, the High Court held that, "when an ascertainable standard is present in a statute, the violator whose conduct falls clearly within the scope of such standard has no standing to complain of vagueness." *Id.* at 247. Because the open-lewdness statute simply codified the common-law crime of the same name, Section 5901 stands "on a footing somewhat different than statutes which attempt to circumscribe conduct newly proscribed." *Id.*

The language of a statute based upon the common law "need not be drawn with the precision that a newly conceived interdiction might require." *Id.* "Thus, statutes which embody common-law definitions have generally

- 13 -

survived attacks on the grounds of vagueness." *Id.* Section 5901 survived constitutional attack when applied to Heinbaugh's actions, because masturbating in a grocery store parking lot rendered him "a hard core violator . . . ." *Id.* at 248 (some punctuation omitted).

Still, the Supreme Court of Pennsylvania conceded that the "broadening of sexual permissiveness, which is an undeniable aspect of contemporary American society, may have served to shrink the perimeters of community morality . . . ." *Id.* at 248. While public masturbation remains an "indecency . . . there might be other conduct, clearly punishable at the time of Blackstone, which could not today be constitutionally punished under the statutory standard" of 18 Pa.C.S.A. § 5901. *Id.* Berrios asserts that her conduct falls in the latter category. She believes that, unlike Heinbaugh, she is not "a hard core violator . . . ." *Id.* at 248 (some punctuation omitted).

The flaw in Berrios' argument is that she presumes that the *Heinbaugh* Court established an either/or test. In her view, one is either a hard core violator to whom the statute may constitutionally apply, or one is not a hard core violator to whom the statute may not constitutionally apply.

In our view, *Heinbaugh* did not create such a clear-cut dichotomy. We read *Heinbaugh* as merely holding that hard core violators may not bring a successful, void-for-vagueness challenge to common-law based statutes. It does not explicitly require the Commonwealth to establish that a defendant is a "hard core violator" to satisfy the precepts of Due Process. Thus, we need not find either that Berrios is a hard core violator or acquit her.

Instead, the test is one of reasonableness under the circumstances of each case. Was it reasonably foreseeable to someone in Berrios' position that the law forbade her conduct? Should she "reasonably understand that [her] contemplated conduct [was] proscribed"? *United States v. Mazurie*, 419 U.S. 544, 553, (1975).

In *Mazurie*, the district court convicted Martin and Margret Mazurie of "introducing spirituous beverages into Indian country, in violation of 18 U.S.C. § 1154." *Id.* at 545. The appellate court reversed on the basis that the statute was void for vagueness. Writing for a unanimous Supreme Court, Chief Justice Rehnquist disagreed and reinstated their convictions. He explained that the Tenth Circuit was too concerned with the lack of specificity in the statute for the word "Indian," because the Mazuries knew which people in the reservation were Indians. Thus, they would have had no difficulty following the law, if they had desired to do so.

"The record plainly establishes that, in the circumstances of this case, the distinction between Indians and non-Indians was generally understood." *Id.* at 553, n.10. "Those who testified about the housing and school surveys displayed no difficulty in making such classification. Nor did Mr. Mazurie." *Id.* "He testified that, when there was trouble at his bar, he would call the county sheriff to deal with a non-Indian, but [he] would call the tribal police to deal with an Indian." *Id.* "When his counsel questioned him as to how he determined which was which, he simply replied: 'Because I knew them.'" *Id.*

The Mazurie's vagueness challenge was futile, because they knew which people to whom they could not legally sell liquor.

Like the Mazuries, Berrios knew the law's command, but she chose to break it anyway. Her interaction with the responding police officer reveals that she knew that exposing her breasts on a public street was against the law. When the officer approached her to inquire into her actions, Berrios lied to him. Instead of saying she exposed her entire breasts, she told the officer that she only exposed her shoulders and her stomach.

In fact, she stated, "It's basically a he-said-she-said . . . I mean, if showing my shoulders and showing my stomach is - - is - - then I'm guilty," Berrios replied. Commonwealth's Ex. 7 at 1:25. From this statement, the record reveals that Berrios believed that exposing her shoulders and stomach was not a crime. From her tone of voice and body language in the video, it is clear that she meant "then I'm guilty" to be sarcastic. *Id.*

Hence, if Berrios had truly no notice or knowledge that the law forbade her from exposing her breasts in public, she would have treated her exposed breasts as she treated her exposed shoulders and stomach. She would have admitted to exposing them to the officer along with her shoulders and stomach and then sarcastically said "then I'm guilty." Instead, Berrios hid the fact that she had publicly exposed her breasts from the officer in a clear indication of her consciousness of guilt.

Berrios' consciousness of guilt establishes that, even in her own mind, showing the entire female breast in public and attempting to rouse the sexual

- 16 -

interests of county inmates are "actions which, even by contemporary mores, must be deemed, as at common law, indecencies which tend to corrupt the morals of the community." ***Heinbaugh***, 354 A.2d at 248 (some punctuation omitted). In short, Berrios knew she had committed a "lewd act which [s]he [knew was] likely to be observed by others who would be affronted or alarmed." 18 Pa.C.S.A. § 5901. Accordingly, her void-for-vagueness challenge fails.

We dismiss her second appellate issue as meritless.

**3.    Application to Review Discretionary Aspects of Sentence**

Finally, we come to Berrios' challenge to the discretionary aspects of her sentence. Before reaching the merits of that issue, we must decide whether to grant her petition for allowance of appeal of the discretionary aspects of sentence.

According to the legislature, "The defendant . . . may file a petition for allowance of appeal of the discretionary aspects of a sentence for a felony or a misdemeanor to the appellate court that has initial jurisdiction for such appeals." 42 Pa.C.S.A. § 9781. "Allowance of appeal may be granted at the discretion of the appellate court where it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter." ***Id.***

Thus, there is no right of appeal regarding the discretionary aspects of one's sentence. ***See***, ***e.g., Commonwealth v. Lebarre***, 961 A.2d 176, 178

(Pa. Super. 2008). To decide whether to hear such an issue, this Court conducts a four-part analysis as follows:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the sentencing code.

*Id.*

Berrios complied with the first three prongs of the test, but the Commonwealth contends that she does not present a substantial question. *See* Commonwealth's Brief at 20. As such, we focus our inquiry solely upon the fourth prong.

According to Berrios, her two-months-to-one-year sentence raises a substantial question, because the trial court "fixated upon the seriousness of the offense as it perceived it." Berrios' Brief at 21. She makes this claim despite the fact that that court sentenced her within the standard range, in light of the gravity of the offense and her prior convictions.

The Commonwealth responds:

> [A] Rule 2119 (f) Statement will be deemed sufficient to raise a substantial question to trigger review of the discretionary aspects of sentence only when it articulates the manner in which the sentence violates: either a specific provision of the sentencing code, or a particular fundamental norm underlying the sentencing process. *Commonwealth v. Mouzon*, [812 A. 2d 617 (Pa. 2002)]. [Berrios] has not met this burden.
>
> [She] has not established that there was a violation of the sentencing code, or a particular fundamental norm

underlining the sentencing process. The sentence imposed was within the standard range of the sentencing guidelines; thus, the sentence was appropriate under the sentencing code. **Commonwealth v. Moury**, 992 A. 2d 162, 171 (Pa. Super. 2010). At sentencing, the court considered the penalties authorized by the legislature, and the sentencing guidelines. To determine the suggested sentence for each conviction, sentencing courts must determine the defendant's prior record score and the offense gravity score for each offense. **See**, **Commonwealth v. Hand**, 252 A.3d. 1159, 1168 (Pa. Super. 2021). Open lewdness has an offense gravity score of one. [Berrios] had a prior record score of two. The standard sentencing range for open lewdness is restorative sanctions to two months incarceration. (**See**, 1925 (b) Opinion of the Trial Court). [Berrios] received a sentence of two to twelve months' incarceration. This sentence was within the standard range of the Sentencing Guidelines.

Commonwealth's Brief at 20-21.

We agree with the reasoning of the Commonwealth and, therefore, conclude that Berrios' sentence does not raise a substantial question. We decline to assert appellate jurisdiction over Berrios' third and final issue.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/20/2023