J-S43008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JOSHUA MACIAS | : | |
| | : | |
| Appellant | : | No. 876 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 1, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000078-2021

BEFORE: BOWES, J., STABILE, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 26, 2024**

Joshua Macias appeals from the judgment of sentence imposed following his conviction for firearms not to be carried without a license and carrying firearms in public in Philadelphia. We affirm.

We glean the following facts from the trial court:

On or about the evening of November 5, 2020, [Appellant] and his co-defendant, Antonio LaMotta, traveled from their home state of Virginia to the City of Philadelphia to "stop the steal" of the 2020 presidential election. As [Appellant and LaMotta] traveled to Philadelphia, the Federal Bureau of Investigation ("FBI") received information from a confidential informant that two men and a woman were on their way from Virginia to Pennsylvania with guns and ammunition to "straighten things out" at the Pennsylvania Convention Center ("Convention Center") in center city Philadelphia where votes were being counted. The confidential informant also detailed that the co-defendants were traveling in a silver H2 Hummer. The FBI then advised the Philadelphia Police Department ("PPD") that they had received a tip from an informant that a Hummer was on its way to the Convention Center area to cause trouble and interfere with the election. Due to the high intensity atmosphere, both the FBI and

PPD had command posts set up in the areas around the Convention Center. [A PPD officer] located the unoccupied Hummer with Virginia tags in the area around the Convention Center and made a radio call for officers on bikes and in the general area to look for armed men. . . .

[Appellant and LaMotta] were located by Sergeant [Timothy] Stephan and Officer [Kevin] Sexworth of the PPD on the corner of 12th Street and Arch Street across . . . from the Convention Center. Upon the officers approaching [Appellant and LaMotta], Officer Sexworth asked them if they "happened to come here in a Hummer" to which [Appellant] replied that they had and that it was parked on 13th Street and Race Street. . . . Sergeant Stephan observed a black semiautomatic firearm being openly carried on . . . LaMotta's hip. The imprint of a firearm was seen beneath [Appellant's] sport coat on his right hip. Officer Sexworth asked . . . LaMotta if he had a permit to carry the firearm because he was open carrying at which time . . . LaMotta said he did not. . . . [Appellant] stated that both of the men had permits to carry firearms. [He] handed his identification, his military ID and his Virginia issued license to carry.

. . . LaMotta's firearm was recovered from his person and he was placed in handcuffs while an investigation as to his licensure status ensued. Sergeant Stephan informed [Appellant] that he was free to go at any moment and returned all of his items back to him at that time. However, [he] remained in the location and voluntarily continued having a conversation with the officers on the scene. Following [the] conversation . . ., [Appellant] was detained and a forty caliber Beretta was removed from his person so that further investigation as to firearm license reciprocity between Virginia and Pennsylvania was determined. [It was established that Appellant and LaMotta's Virginia licenses to carry were not recognized in Pennsylvania.] At some time during their detainment, . . . LaMotta gave officers consent to search his vehicle.

Sergeant Stephan then traveled a block and a half to North 13th Street where the Hummer was located. The police recovered a black and silver AM15 assault rifle with no serial number, a black silencer, two rifle handles, five magazines of assorted ammunition, and three boxes of assorted ammunition. There was also a samurai sword in the Hummer that was not recovered. While the police searched the vehicle, [Appellant and LaMotta]

were formally interviewed by the FBI at their mobile command center on Arch Street. . . . Following that interview, [they] were placed under arrest by PPD.

Trial Court Opinion, 12/22/23, at 1-4 (cleaned up).

Appellant was thereafter charged with firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, conspiracy, interference with primaries/elections, and hindering performance of duty. The matter proceeded to a bench trial, and Appellant was convicted of the two firearms-related offenses and found not guilty of the remaining offenses. The court sentenced Appellant to eleven and one half to twenty-three months with immediate parole, plus two years of reporting probation.

This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement raising various issues, and the trial court issued a responsive Rule 1925(a) opinion. In his brief, Appellant limits his challenges to the following issues:

> 1. Should [Appellant's] conviction for [18 Pa.C.S.] § 6108 be vacated because the statute is unconstitutional pursuant to the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, [597 U.S. 1] (2022)?
>
> 2. Did the Court err in grading [Appellant's] conviction for [18 Pa.C.S.] § 6106 as a felony of the third degree when the only other criminal violation alleged to have been committed contemporaneously was [18 Pa.C.S.] § 6108, which is an unconstitutional statute under the Supreme Court's *Bruen* decision?

Appellant's brief at 2.

Both of Appellant's claims depend upon a finding that § 6108 is unconstitutional under **Bruen**. "As the constitutionality of a statute presents a pure question of law, our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Berrios**, 297 A.3d 798, 806 (Pa.Super. 2023) (cleaned up). The challenging party also "carries the high burden of demonstrating [that the law] clearly, palpably and plainly violates the . . . Constitution of the United States." **Commonwealth v. McIntyre**, 314 A.3d 828, 839 (Pa.Super. 2024).

Section 6106 of our Crimes Code provides, in pertinent part:

**(a) Offense defined.--**

> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

> (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S. § 6106. Section 6108 is specific to the city of Philadelphia, and states that:

> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in [Philadelphia] unless:

> > (1) such person is licensed to carry a firearm; or

- 4 -

(2) such person is exempt from licensing under [§] 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S. § 6108. None of the exemptions listed in § 6106(b) is at issue in this matter.

Licensure is governed by § 6109, which states that "[a] license to carry a firearm shall be for the purpose of carrying a firearm concealed on or about one's person or in a vehicle and shall be issued if, after an investigation not to exceed [forty-five] days, it appears that the applicant is an individual concerning whom no good cause exists to deny the license." 18 Pa.C.S. § 6109(e)(1). In sum, "[e]xcept in Philadelphia, no license is required in order to carry a firearm openly on one's person[,]" but if an individual is licensed to carry a firearm under § 6109, they are permitted to carry "in public, openly or concealed, within a vehicle or without, throughout every municipality in Pennsylvania." *Commonwealth v. Hicks*, 208 A.3d 916, 926 (Pa. 2019).

Appellant hinges his constitutional argument on the United States Supreme Court's decision in *Bruen*. In that case, the High Court declared that "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." *Bruen*, 597 U.S. at 10. The Court thus considered whether a New York statute impermissibly infringed upon that right by allowing the issuance of licenses to carry a firearm "only when an applicant demonstrate[d] a special need for self-defense." *Id*. at 11. The Court concluded that New York's "proper-cause requirement" to obtain a

license did not comport with the Second and Fourteenth Amendments, and it created a new test for courts to use in assessing these types of questions.

Importantly, however, the **Bruen** Court characterized New York as one of only several unique "may-issue" regimes, where a license is granted or denied based on subjective criteria. By contrast, forty-three states, including Pennsylvania, are "shall-issue" jurisdictions that grant licenses based on objective criteria. Justice Kavanaugh, joined by Chief Justice Roberts, wrote separately to clarify that **Bruen** "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense" and "does not affect the existing licensing regimes—known as 'shall-issue' regimes—that are employed in 43 states." **Id**. at 79 (Kavanaugh, J., concurring, joined by Roberts, C.J.).

Our Court has recently addressed a **Bruen** challenge to § 6106 in **Commonwealth v. Mead**, ___ A.3d ___, 2024 WL 4646924 (Pa.Super. Nov. 1, 2024). There, we reiterated that **Bruen** "held only that licensing statutes that require a showing of special need for a firearm or give the state uncontrolled discretion to deny a license infringe the right to bear arms[.]" **Mead**, 2024 WL 4646924 at *5. This Court continued: "Statutes that require a person to obtain a license to carry a firearm therefore do not violate the Second Amendment where the statute does not require the applicant to show any special need and requires the government to issue the license unless the applicant fails a background check." **Id**. at *6. As Pennsylvania's licensing

scheme fits this bill, the **Mead** Court stated that "Pennsylvania's firearms licensing statute is precisely" the type of law approved under **Bruen**. **Id**. Accordingly, the **Mead** Court deemed § 6106 constitutional.

Appellant contends, however, that the Supreme Court in **Bruen** did not confine its applicability only to "may-issue" states and that this position "narrows the Court's ruling . . . well beyond the actual scope[.]" Appellant's brief at 6-7. He argues that **Bruen** requires courts to assess whether any firearms-related statute meets the two-part test outlined by the Supreme Court, including whether the law has a historical contemporary. Appellant maintains that the Commonwealth did not meet its burden in showing that § 6108 has a historical analogue, and thus the statute is unconstitutional.

Based on the above caselaw, we conclude that Appellant's argument lacks merit. The Supreme Court limited **Bruen** to "may-issue" regimes by distinguishing New York's law from the majority of states that are "shall-issue" jurisdictions and repeatedly characterizing the question before it as analyzing New York's "proper-cause requirement." **Bruen**, 597 U.S. at 27, 30-34, 38-40, 70-71. Pennsylvania's licensing regime, on the other hand, is precisely the type of system that the Supreme Court pronounced constitutional because this commonwealth "shall issue" a license when the applicant meets objective criteria. 18 Pa.C.S. § 6109(e)(1). Under § 6108, persons who desire to carry a firearm in the public areas of Philadelphia may do so as long as they obtain a license to carry a firearm in Pennsylvania. **See Hicks**, 208 A.3d at 926.

Appellant was prohibited from carrying a firearm in Philadelphia only because he was not licensed to do so. Hence, his argument affords no relief.

Appellant's subsequent argument, regarding his request that his § 6106 violation be graded as a first-degree misdemeanor and not a third-degree felony, is likewise without merit. We have concluded that § 6108 is constitutional under **Bruen**. A violation of § 6108 can be used to grade a violation of § 6106 as a third-degree felony. **See Commonwealth v. Scarborough**, 89 A.3d 679, 685 (Pa.Super. 2014) (holding that a violation of § 6108 may be used as the simultaneous "other violation" to grade a § 6106 violation as a third-degree felony). Thus, the trial court was permitted to use Appellant's § 6108 conviction to grade his § 6106 violation as a third-degree felony.

Finding no reason to grant relief, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/26/2024