J-S47036-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OUDEOM VILAYPHANH | : | |
| | : | |
| Appellant | : | No. 2751 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008798-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OUDEOM VILAYPHANH | : | |
| | : | |
| Appellant | : | No. 2752 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008799-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OUDEOM VILAYPHANH | : | |
| | : | |
| Appellant | : | No. 2753 EDA 2023 |

Appeal from the Judgment of Sentence Entered October 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008800-2021


BEFORE:  KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.:                    **FILED MARCH 11, 2025**

Oudeom Vilayphanh ("Vilayphanh"),[1] appeals[2] from the judgments of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of third-degree murder, possession of an instrument of a crime, and two counts of aggravated assault.[3]  Vilayphanh claims he was denied a fair trial because the trial court limited his cross-examination of an expert witness.   Because we conclude that Vilayphanh waived consideration of his claimed constitutional violation, we affirm.

We glean the following relevant facts and procedural history from the certified record.  On July 6, 2021, Vilayphanh was living at his parents' house in Philadelphia, Pennsylvania, where he had moved approximately one month before, following his separation from his wife.  N.T., 5/22/2023, at 123, 139. After 11:00 p.m. that night, Vilayphanh's brother, Khamphou, arrived at the house to stay the night because his electricity had been shut off and the weather was hot.  *Id.* at 123, 168-69.  Vilayphanh's mother, Boupha, was awake when Khamphou arrived, but then went back to bed.  *Id.* at 169.

---

[1] The certified record contains various spellings of the surname Vilayphanh. We use the spelling contained in the notes of trial testimony.  ***See generally*** N.T., 5/22-25/2023.

[2] This Court consolidated the above-referenced appeals sua sponte on November 7, 2023.

[3] 18 Pa.C.S. §§ 2502, 907(a), 2702(a)(1).

Vilayphanh's father, Khamhoung, had gone to bed at approximately 10:00 p.m.[4] *Id.* at 123.

At approximately 2:00 a.m., Khamhoung awoke to sounds of Vilayphanh and Khamphou arguing downstairs. *Id.* at 126. He got out of bed, saw them drinking alcohol in the kitchen, told them to go to the basement, returned to his bedroom, locked his bedroom door, and went back to sleep. *Id.* at 126-29, 139.

At approximately 5:50 a.m. on the morning of July 7, 2021, Khamhoung awoke to the sounds of Khamphou loudly hitting his father's bedroom door and calling out for him. *Id.* at 129-30. Khamhoung did not answer. *Id.* at 130. Two to three minutes later, Khamhoung and Boupha heard gunshots. *Id.* at 130, 169-70, 174. They stayed in their bedrooms and separately called police, who arrived within ten minutes. *Id.* at 130, 170, 172-73.

City of Philadelphia Police Officer Timothy Straus, accompanied by three other officers, knocked on the front door. N.T., 5/23/2023, at 58-59. When Khamhoung opened his bedroom door to answer the front door for police, he saw his son Khamphou laying on the floor outside his bedroom; he did not see Vilayphanh. N.T., 5/22/2023, at 131-32. Khamhoung answered the front door and although there was a language barrier, he communicated to police that Vilayphanh had a gun and Khamphou had been shot inside the house. N.T., 5/23/2023, at 59-60; N.T., 5/22/2023, at 132-33, 98. Police followed

_____

[4] Vilayphanh's parents slept in separate bedrooms on the second floor of the house.

Khamhoung inside the front room of the house. N.T., 5/23/2023, at 60; N.T., 5/22/2023, at 98. Officer Straus observed some blood on the floor by the base of the stairs leading to the second floor. N.T., 5/23/2023, at 60. In trying to locate Vilayphanh, Khamhoung opened the basement door and saw Vilayphanh at the bottom of the stairs. N.T., 5/22/2023, at 133. Vilayphanh started firing gunshots towards the top of the basement stairs and one struck Khamhoung in the neck and shoulder. *Id.* Officer Straus retreated to the second floor and entered Boupha's bedroom, where he found her hiding. N.T., 5/23/2023, at 61-62; N.T., 5/22/2023, at 174-75. The other officers retreated out the front door of the house. N.T., 5/22/2023, at 99, 102.

Inside, Khamhoung asked Vilayphanh why he shot him, and Vilayphanh responded that he was sorry. *Id.* at 135. Khamhoung tried to leave the house, but he could not open the front door because his hands were on his neck; Vilayphanh opened the door for him and Khamhoung ran outside.[5] *Id.* at 135-36. With a gun in his hand, Vilayphanh ran out of the house after his father, then went back inside the house, and then outside once again. *Id.* at 99. Eventually, Vilayphanh dropped the firearm, and police took him into custody. *Id.* While in custody at the scene, Vilayphanh told police that robbers were inside the home. *Id.* at 119. After a SWAT team cleared the house, Officer Straus and Boupha exited her bedroom, where they had

_____

[5] An officer transported Khamhoung to the hospital, where he recovered from his gunshot wounds. N.T., 5/22/2023, at 137.

remained during the incident. N.T., 5/23/2023, at 63. An autopsy showed that Khamphou died of a single gunshot wound to the back of the head, fired at close range from Vilayphanh's firearm. *Id.* at 9-10, 44-45, 52.

Thereafter, the Commonwealth charged Vilayphanh with murder, possession of an instrument of a crime, two counts of attempted murder, and two counts of aggravated assault.[6] After Vilayphanh waived his right to a jury trial, the matter proceeded to a four-day bench trial in May 2023. At trial, Vilayphanh claimed imperfect self-defense, arguing that he acted while in a dissociative state where had a belief that he was under threat from intruders inside his house and had to protect his family from harm. *See* N.T., 5/25/2023, at 18; N.T., 5/23/2023, at 175; N.T., 5/22/2023, at 31, 35. The Commonwealth responded by claiming Vilayphanh was in an alcohol and prescription drug induced blackout on the morning of the incident. *See* N.T., 5/25/2023, at 5.

In relevant part, Vilayphanh presented the testimony of Victoria Reynolds, Ph.D., who the trial court qualified as an expert in clinical psychology with a specialty in traumatic life experiences. N.T., 5/23/2023, at 110. She evaluated Vilayphanh and diagnosed him with untreated and severe post-traumatic stress disorder ("PTSD") (dissociative subtype) and substance

_____

[6] At docket number CP-51-CR-0008798-2021, the Commonwealth charged Vilayphanh with the murder of Khamphou and possession of an instrument of a crime. At docket number CP-51-CR-0008799-2021, the Commonwealth charged him with attempted murder and aggravated assault of Khamhoung, and at CP-51-CR-0008800-2021, with attempted murder and aggravated assault of Officer Straus.

abuse disorder (alcohol). *Id.* at 120, 154. Vilayphanh recounted multiple traumatic experiences to Dr. Reynolds, including the death of his younger brother because of illness; fleeing Laos at approximately age seven and leaving behind his grandparents and one of his brothers; crossing the Mekong River to Thailand, living in refugee camps in Thailand and the Philippines; food insecurity; his father's serious illness while living in a refugee camp; a fire that destroyed half of his refugee camp and forced his family to flee; his father's corporal punishment, including a public beating with a stick after Vilayphanh got stuck in and was rescued from a substance similar to quicksand; arriving in the United States at approximately age eight to violence and threats of violence against him and his family by gangs in his Philadelphia neighborhood; and multiple home invasions at his Philadelphia home by gang members, including one in retaliation for his father's complaint about trash in the street. *Id.* at 125-40. Specifically, he recounted an incident at approximately age twelve where gang members removed metal bars from a window of his home while his family slept, but his mother woke up and foiled the attempted invasion. *Id.* at 139. Dr. Reynolds opined that based on this specific home invasion memory and his PTSD, Vilayphanh awoke on the morning of July 7, 2021, to a "screeching metal sound" that triggered a "dissociative flashback" where Vilayphanh believed he was under threat from intruders in his house and that he reacted as he did to protect his family from harm. *Id.* at 156-58, 161-62, 175.

In rebuttal, the Commonwealth presented the testimony of Michelle Joy, M.D., who the trial court qualified as an expert in general forensic psychiatry. N.T., 5/24/2023, at 25. Dr. Joy did not believe Vilayphanh suffered trauma to the extent Dr. Reynolds opined for two reasons: he talked with "relative ease" and "kind of laughed or joked" about the past experiences he had described to Dr. Reynolds, and when Dr. Joy pressed him for specific details, she noted inconsistencies between what he told her and what he reported to Dr. Reynolds. *Id.* at 33-38, 102. Dr. Joy opined that Vilayphanh's "actions at the time of the shooting[s] were more consistent with a period of intoxication due to mixing alcohol and medication" which caused him to experience a blackout, as opposed to a dissociative state related to PTSD.[7] *Id.* at 29, 32, 66-73. Of relevance here, Dr. Joy evaluated Vilayphanh in the presence of one of Vilayphanh's attorneys, Roger Schrading, who took notes during the evaluation. *Id.* at 27, 96.

On May 25, 2023, after specifically stating that it found Dr. Joy more credible than Dr. Reynolds, the trial court found Vilayphanh guilty as stated above and not guilty of the attempted murder charges. The trial court ordered a presentence investigation report and mental health examination. On October 11, 2023, the trial court sentenced Vilayphanh to an aggregate term

---

[7] The parties agree Vilayphanh took his prescription sedative medication and consumed a large amount of alcohol before going to bed in the early hours of July 7, 2021, and that the medication and alcohol were contraindicated. *See* N.T., 5/25/2024, at 18, 22; N.T., 5/24/2023, at 29-33; N.T., 5/22/2023, at 40.

of fourteen to twenty-eight years of incarceration. This timely filed appeal followed.

On appeal, Vilayphanh presents one issue for our consideration:

> Where the defense puts forth a theory of voluntary manslaughter based on imperfect self-defense, and the only issue before the court was Appellant's mental state, is not a new trial warranted when the trial court denied Appellant the right to present his defense and thereby denied him a fair trial when it precluded the defense from cross-examining the Commonwealth's expert with valid impeachment evidence calling into question her impartiality and credibility regarding his mental state?

Vilayphanh's Brief at 3.

Vilayphanh argues that the trial court denied his federal and state constitutional rights to present a defense when it precluded him from cross-examining Dr. Joy using admissible impeachment evidence, i.e., Attorney Schrading's notes. *Id.* at 2, 22, 24, 26. Because his defense rested solely on his mental state, he contends that when Dr. Joy's cross-examination testimony minimized Vilayphanh's traumatic experiences, the trial court should have allowed him to use Attorney Schrading's notes to show her bias toward the Commonwealth or that she was "careless in the performance of her evaluation." *Id.* at 24. Vilayphanh argues it was "irrelevant that the questions were based on co-counsel's notes" because Dr. Joy "can be questioned on the accuracy of her recollection and can be impeached by the defense attorney's testimony and supported by his contemporaneous notes." *Id.* at 24. According to Vilayphanh, Attorney Schrading attended Dr. Joy's

evaluation "so she could see he was taking notes, and that his notes would be available as a source of cross-examination if she were to stray from the actual substance of her evaluation, which she indeed did." *Id.* at 25. Vilayphanh contends he is entitled to a new trial. *Id.* at 27-28, 30.

In its opinion, the trial court found Vilayphanh waived this issue because he failed to raise it in the trial court, explaining that defense counsel failed to challenge the trial court's ruling to disallow cross-examination of Dr. Joy using Attorney Schrading's notes, request Attorney Schrading's disqualification as Vilayphanh's counsel to permit him to testify as a rebuttal witness,[8] or seek to introduce his notes. Trial Court Opinion, 3/19/2024, at 5-6.

"The issue of waiver presents a question of law, and, as such, our standard of review is de novo, and our scope of review is plenary."

---

[8] The trial court noted that the attempt by Vilayphanh's other attorney, Andrea Konow, to impeach Dr. Joy's testimony using Attorney Schrading's notes turned Attorney Schrading into a trial witness in contravention of Rule 3.7 of the Pennsylvania Rules of Professional Conduct. Trial Court Opinion, 3/19/2024, at 5. Rule 3.7 provides in relevant part as follows:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

Pa.R.P.C. 3.7(a).

*Commonwealth v. Berrios*, 297 A.3d 798, 805 (Pa. Super. 2023) (citation and quotation marks omitted). "Issues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "Indeed, issues, even those of constitutional dimension, are waived if not raised in the trial court." *Berrios*, 297 A.3d at 805 (citation and quotation marks omitted). "[T]o preserve an evidentiary objection for purposes of appellate review, a party must interpose a timely and specific objection in the trial court." *Commonwealth. Thomas*, 194 A.3d 159, 166 (Pa. Super. 2018).

During cross-examination, Attorney Konow, asked Dr. Joy several questions about Vilayphanh's account of the home invasion he said he experienced at age twelve. The record reflects the following exchange:

Q    I said his memory was that he heard noises. Mr. Schrading put a note to that in his notes.

A    He heard noises when?

Q    When that break-in or attempted break-in was occurring?

A    I do not recollect that. In fact, he told me that he was asleep. So I don't know how he would have heard noises when he was asleep, and I don't have the other attorney's notes, that was not in my notes and the rest of, let's say, if that is one detail of it, I don't understand how that would be consistent with the rest of what he was telling me in that interview which is that he was asleep and that the next day, they found the bars on the ground and that his mother may or may not have come in but, again, he told me he was asleep during the event, so I don't understand how he could have heard noises during it.

THE COURT:    Counsel, are you cross-examining her with the notes that your co-counsel took?    That is inappropriate. I allowed co-counsel to sit in, because you

- 10 -

requested it, to make sure that the parameters of the evaluation were such that he didn't admit to any other criminal conduct, his rights were protected but certainly not for Mr. Schrading to take notes as a witness and then you, as his co-counsel, to then cross-examine as if you are using this witness statement against her. That, we are not going to do.

MS. KONOW:     I am not attempting to use his statement.

THE COURT:     He is a witness. You are making him a witness right now and you can't. I would ask that you not refer to any notes that Mr. Schrading took.

MS. KONOW:     Very good.

THE COURT:     I specifically indicated that day that he was permitted down there but not to take notes, so that you could try and contradict the doctor later on. Just continue.

N.T., 5/24/2023, at 105-06.[9]  Shortly thereafter, Attorney Konow questioned

Dr. Joy about Vilayphanh's recount of a near-drowning experience.  *Id.* at

113-15.  The record reflects the following exchange:

Q     Okay. He was terrified of losing his footing. He told you he was terrified; right?

A     He didn't use that word, no. We might use the word scared, about all kinds of things. It doesn't mean, the same term is not terrifying and it doesn't mean that he was afraid he was going to die. He could be afraid of – it could be like me falling over.

_____

[9] Although Vilayphanh points out in his brief that the trial court's order not to take notes during Dr. Joy's evaluation does not appear in the record, he does not contest that the trial court issued such an order. *See* Vilayphanh's Brief at 19 n.1, 25. The Commonwealth "takes no position as to whether or not such a request was actually made[.]" Commonwealth's Brief at 13 n.7. We are unable to locate such an order in the certified record; given our resolution of this case, however, its absence does not hamper our review.

Q     He told you that he could feel it as you were talking about it, didn't
      he?

A     (No. response.)

Q     That's not in your report.  He told you that, however?

A     No, it's not in my report, but he told me that?

Q     Yeah.

      THE COURT: Because that means Mr. Schrading wrote it in his
      notes which I asked him not to do.

      MS. KONOW:     I'm not using his –

      THE COURT: Objection sustained.  Go ahead.

*Id.* at 115-16.

The record confirms that when the trial court precluded Attorney Konow from using Attorney Schrading's notes, she did not make any argument in opposition, including any claimed constitutional violation; ask the trial court to disqualify Attorney Schrading as Vilayphanh's counsel so he could testify as a rebuttal witness; or seek to introduce his notes as evidence.  *See id.* at 105-06, 115-16.  We therefore agree with the trial court's conclusion that Vilayphanh failed to preserve this issue in the trial court.  *See* Pa.R.A.P. 302(a); *Berrios*, 297 A.3d at 805; *Thomas*, 194 A.3d at 166.  Accordingly, Vilayphanh's issue is waived and not reviewable by this Court on appeal.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/11/2025