J-S44031-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SADDIQ CLINTON | : | |
| | : | |
| Appellant | : | No. 3226 EDA 2023 |

Appeal from the Judgment of Sentence Entered November 14, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003820-2022

BEFORE:  NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.:                    **FILED MARCH 31, 2025**

Clinton appeals from the judgment of sentence imposed following his convictions for firearms not to be carried without a license and carrying firearms on public streets or public property in Philadelphia.[1]  We affirm

We adopt the trial court's summary of the facts.  *See* Trial Court Opinion, 4/15/24, at 2-3.  Briefly, Philadelphia Police Officer Fred MacConnell ("Officer MacConnell") conducted a plain clothes narcotics surveillance near a convenience store in North Philadelphia.  Officer MacConnell knew the area to be a "high drug, high crime location." *Id*. at 2.  Office MacConnell saw Clinton show a gun to two men in a parking lot.  As Clinton left the area, Officer MacConnell radioed other police officers and told them what he observed.  Officer Shawn Bossert ("Officer Bossert") was driving with his partner — both

_____

[1] *See* 18 Pa.C.S.A. §§ 6106, 6108.

in plain clothes — when he saw Clinton walking "about two car lengths" away. *Id*. at 3; *see also* N.T., 1/17/23, at 23. The officers stopped their car, and as soon as Officer Bossert exited the car, Clinton began running. Following a brief chase, Police Officer Tyrone Bacon ("Officer Bacon") apprehended Clinton. During Clinton's arrest, Officer Bacon saw a bulge in his right lower pants leg and recovered a firearm.

The Commonwealth charged Clinton with the above firearms offenses. Clinton filed a motion seeking to suppress any physical evidence, maintaining that it was seized: (1) without probable cause; and (2) without reasonable suspicion to stop and frisk him. Clinton did not offer any supporting explanation.

The trial court held a hearing. Clinton claimed that the seizure of the gun was unlawful because: (1) there was "no callout for someone who matche[d] his description doing anything with a firearm"; (2) there was no evidence that he was doing anything illegal; and (3) the police did not know whether he had a license to carry the gun. N.T., 1/17/23, at 29. Clinton thus argued that "his stop and arrest" lacked "reasonable suspicion that a crime was occurring." *Id*.

After taking the matter under advisement, the trial court ruled the interaction was a lawful investigative detention, where Clinton's "flight from Officer Bossert, in a high crime area, gave rise to reasonable suspicion

sufficient to detain [him]." Trial Court Opinion, 4/15/24, at 3-4, 6. Thus, the trial court denied Clinton's suppression motion.

The matter proceeded to a stipulated bench trial, and the trial court found Clinton guilty of both firearm offenses. The trial court imposed concurrent sentences, on each conviction, of eleven and one-half to twenty-three months' incarceration with immediate parole to house arrest, followed by two years' probation.

Clinton filed a timely notice of appeal. In response to the trial court's Pa.R.A.P. 1925(b) order, he filed a timely concise statement raising for the first time, that the police lacked "reasonable suspicion to seize [him] by chasing and tackling him because he fled from them in a 'high crime' area." Request for Extension of Time to file a Supplemental Statement of Errors Upon Receipt of All Notes of Testimony, 3/4/24, at 2 (unpaginated).

On appeal, Clinton raises the following issue for our review: "Did the trial court err in failing to suppress evidence when it held that police had reasonable suspicion justifying an investigatory stop based upon [Clinton's] purported flight from police in a high-crime neighborhood, when the record does not support the trial court's findings?" Clinton's Brief at 2. Clinton argues that the trial court erred in concluding that the police had reasonable suspicion to stop him. In support, he avers there was no evidence that he was "aware of any police presence when he ran," and thus Officer Bossert's testimony failed to establish that he knowingly fled from the police. *Id*. at 6-7, 9.

Furthermore, Clinton maintains that this Court is not bound by the factual findings of the trial court relating to his flight. *See id*.

Both the trial court and the Commonwealth suggest that Clinton has waived his instant issue because he did not litigate it at the suppression hearing. *See* Trial Court Opinion, 4/15/24, at 7; *see also* Commonwealth's Brief at 5-6. We agree.

"The issue of waiver presents a question of law, and, as such, our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Berrios*, 297 A.3d 798, 805 (Pa. Super. 2023). "[I]ssues not raised in [trial] courts are waived and cannot be raised for the first time on appeal." *Id*. (*quoting* Pa.R.A.P. 302(a)). "A defendant cannot raise, on appeal, a claim that he was entitled to suppression on a theory he did not raise" before the trial court. *Commonwealth v. Jones*, 193 A.3d 957, 964 (Pa. Super. 2018).

Our review of the record reveals that Clinton did not litigate his instant issue, of whether the police had reasonable suspicion to stop him as he did not know that Officer Bossert was a police officer when he decided to flee, before the trial court. Instead, in his suppression motion and at the suppression hearing, he merely averred the police lacked probable cause or reasonable suspicion to stop and frisk him, because there was no evidence of any criminal activity. As he raises his current issue for the first time on appeal,

he did not properly preserve it for appellate review.  ***See Commonwealth v. Jones***, 193 A.3d at 964.

Thus, we affirm Clinton's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 3/31/2025