J-S12021-17

2017 PA Super 97

| IN THE INTEREST OF: A.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: R.W., FATHER | No. 1715 MDA 2016 |

Appeal from the Order Entered September 30, 2016
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000206-2015

BEFORE:  PANELLA, J., OTT, J., and MUSMANNO, J.

OPINION BY OTT, J.:                                    **FILED APRIL 11, 2017**

R.W. ("Father") appeals from the September 30, 2016 order in the Court of Common Pleas of York County changing the placement goal to adoption with a concurrent goal of placement with a legal custodian with respect to his son, A.W. ("Child"), born in July of 2015.[1]  We reverse and remand in accordance with the following decision.

The record reveals the following facts and procedural history.  On September 15, 2015, the trial court placed Child in the legal and protective custody of York County Children, Youth, and Families ("CYF" or "Agency"). CYF then placed Child in kinship foster care.  Adjudication, 9/24/15, at 1.

---

[1] In addition, the order changed the placement goal with respect to L.F. ("Mother").  Mother did not file a notice of appeal.

On September 24, 2015, the court adjudicated Child dependent, and his placement goal was return to parent with a concurrent goal of adoption.

At the time of Child's placement, Father was incarcerated. The order of adjudication required Father to comply with family service plan ("FSP") goals including but, not limited to, securing stable employment, housing, and in-home services. Adjudication, 9/24/15, at 3. With respect to visits with Child, the order provided, "Father may request supervised visitation upon approval from SCI [State Correctional Institution] or upon his release [from prison] and return to York County." *Id.* at 2.

On December 17, 2015, a status review hearing[2] occurred before a dependency master, who found that Father remained incarcerated at SCI Coal Township, and, although he has had no telephone contact with CYF, he "telephones about once a week to speak with the child." Order, 12/18/15, at 2. The court adopted the findings of the master by order dated December 18, 2015.

On March 9, 2016, the trial court held a permanency review hearing, during which the CYF caseworker, Wanda Muhly, and Father testified *via* telephone from SCI Coal Township. Based on the testimony, the trial court found that Father has been moderately compliant with the permanency plan "in that [he] remains incarcerated at Coal Township SCI. He is eligible for

---

[2] The trial court explained that a status review "is an expedited [p]ermanency [h]earing." Trial Court Opinion, 11/10/16, at 1.

parole in late April or early May, 2016. Father would like to be a resource for his son. He contacts the kinship parents once a week and writes letters to his son." Order, 3/9/16, at 1.

On April 25, 2016, Father was transferred to a halfway house in Harrisburg. Order, 6/9/16, at 2. Thereafter, on June 9, 2016, a status review hearing was held before the master, who found that Father "works with the Agency to arrange visits and with the Agency to arrange a home team. He opened with Catholic Charities yesterday." *Id.* at 2. Further, the master found that Father is employed full-time at Old Country Buffet in Harrisburg, *inter alia*. The trial court adopted the master's findings by order dated June 9, 2016.

The master held the next permanency review hearing on August 30, 2016, and found that Father was released from the halfway house in Harrisburg five days earlier, on August 25, 2016, and that he had moved to the York area. Order, 8/30/16, at 1. The master concluded that Father was in minimal compliance with the permanency plan based on finding that "Father was assigned a Catholic Charities Team on June 8, 2016, but that he missed appointments, and the therapeutic portion of the team closed out unsuccessfully." *Id.* Further, the master found that "[t]he GAL notes that Father had the opportunity to visit the Child, attend doctor's appointments and call the Foster Parents regarding the welfare of the Child and did not." *Id.* at 1-2.

However, the master recommended as follows on August 30, 2016.

Father states that he has a lot on his plate since being out of prison and he wants to have the opportunity to try to work towards reunification now that he is in the York area. [Catholic Charities] is willing to reopen if the Agency makes a referral. The Agency will make the referral for the team to reopen with Father. Should there be a delay in [Catholic Charities] starting, the Agency is to work with Father to arrange supervised visitation through the Agency.

*Id.* at 2. The trial court adopted the findings of the master by order dated August 31, 2016.

On September 30, 2016, the trial court held a status review hearing during which Brandon Ambrose, the CYF caseworker, testified.[3] By order the same date, the court changed the goal to adoption with a concurrent goal of placement with a legal custodian. The court directed CYF "to start the termination of parental rights process in regards to both parents." Order, 9/30/16, at 2.

Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b). The trial court filed its Rule 1925(a) opinion on November 10, 2016.

Father presents the following issue for our review:

_____

[3] CYF's counsel stated during the subject proceedings that the trial court "requested this expedited hearing to evaluate where we stand in regard to this matter." N.T., 9/30/16, at 3.

- 4 -

> 1. Whether the trial court abused its discretion in changing the dependent child's permanency goal from reunification to adoption following a status review hearing where the record did not support such a goal change[?]

Father's brief at 4 (footnote omitted).

We have explained our scope and standard of review in dependency cases as follows.

> [W]e must accept the facts as found by the trial court unless they are not supported by the record. Although bound by the facts, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination as opposed to the findings of fact, and must order whatever right and justice dictate. We review for abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and witnesses.

*In the Interest D.P.*, 972 A.2d 1221, 1225 (Pa. Super. 2009) (citation omitted).

A goal change request is governed by the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.*, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq*. *In re M.S.*, 980 A.2d 612, 615 (Pa. Super. 2009). We have recognized that "[b]oth statutes are compatible pieces of legislation seeking to benefit the best interest of the child, not the parent. . . . ASFA promotes the reunification of foster care children with their natural parents when feasible.

- 5 -

. . . Pennsylvania's Juvenile Act focuses upon reunification of the family, which means that the unity of the family shall be preserved 'whenever possible.'" ***Id.*** (citing 42 Pa.C.S.A. § 6301(b)(1)). As such, child welfare agencies are required to make reasonable efforts to return a foster child to his or her biological parent. ***In re N.C.***, 909 A.2d 818, 823 (Pa. Super. 2006). When those efforts fail, the agency "must redirect its efforts toward placing the child in an adoptive home." ***Id.*** (citation omitted).

At permanency review hearings for dependent children removed from the parental home, a trial court must consider the following factors:

**(f) Matters to be determined at permanency hearing.—**

At each permanency hearing, a court shall determine all of the following:

   (1) The continuing necessity for and appropriateness of the placement.

   (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

   (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

   (4) The appropriateness and feasibility of the current placement goal for the child.

   (5) The likely date by which the placement goal for the child might be achieved.

   (5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

   (6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

> (i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;
>
> (ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or
>
> (iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

. . .

42 Pa.C.S.A. § 6351(f)(1)-(6), (9). "These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re S.B.*, 943 A.2d 973, 978 (Pa. Super. 2008) (citation omitted). We have stated that, "[s]afety, permanency, and well-being of the child must take precedence over **all** other considerations." *Id.* (citation omitted) (emphasis in original). Moreover, "the burden is on the child welfare agency . . . to prove that a change in goal would be in the child's best interest." *In re R.I.S.*, 36 A.3d 567, 573 (Pa. 2011).

- 7 -

Instantly, in its Rule 1925(a) opinion, the trial court stated that it changed Child's placement goal based on his "lack of a bond with the biological parents and the need for the child to have permanency." Trial Court Opinion, 11/10/16, at 2 (citing N.T., 9/30/16, at 11). The court explained as follows, in part.

> The child has only ever lived [with] his foster family, and therefore, they are the only family the child has known. The child was adjudicated dependent approximately a year prior to the change of goal to adoption on September 30, 2016. During that year, minimal progress was made towards the prior goal of reunification. Father was incarcerated, but is now living with his aunt; however, he does not have satisfactory housing for reunification. Father has not made any effort to engage in the child's life since being released from prison; he has not visited, attended doctor's appointments, or even called on the child's birthday.

*Id.* at 2-3 (citations to record omitted).

On appeal, Father argues that the trial court erred by failing to address all of the relevant factors set forth in Section 6351(f) before issuing the subject order. Specifically, Father asserts that the court "did not reference the timeframe set forth in the family service plan or otherwise determine the likely date by which the child's reunification with [Father] might be achieved. Nor did the court determine whether or not CYF had made reasonable efforts to finalize the permanency plan that was in effect." Father's brief at 12. Further, Father argues that the record does not support the court's findings with respect to (1) the lack of a bond between Father and Child and (2) that

Father "has not made any effort to engage in the child's life since being released from prison" and/or "has not visited" Child. *Id.* at 13.

CYF and the Guardian *Ad Litem* filed a joint appellee brief in which they assert that Father has made no progress in addressing the issues that caused Child's placement, and that the goal change order is in Child's best interest.[4] For the reasons that follow, we disagree.

By the time of the subject proceedings, Child was in placement for twelve and one-half months, and Father was released from prison during the last five of those months. Indeed, on April 25, 2016, Father was paroled to a halfway house in Harrisburg. On August 25, 2016, Father was released from the halfway house, and he immediately relocated to York County. Therefore, Father had been living in York County for approximately one month at the time of the September 30, 2016 hearing.

The record reveals that Father had made progress with the permanency plan from the time of his release from prison through the status review hearing on June 9, 2016. At the permanency review on August 30,

_____

[4] We observe that, during the subject proceedings, CYF did not request a goal change. Rather, counsel for CYF stated as follows on the record in open court: "I think the father is no longer . . . shackled by his incarceration type issues. So, I think the next few months are exceedingly important for father to make some progress in regards to their reunification efforts or . . . the [A]gency is going to look at alternate goals." N.T., 9/30/16, at 5. In contrast, the Guardian *Ad Litem* requested a goal change stating, "I do take more of a hard line on this case. . . . I don't feel like my client is treated fairly in having to wait until father gets his act together when he already has had the opportunity to do so." *Id.* at 10.

2016, the court found, in part, that Father had missed appointments with the Catholic Charities team, "and the therapeutic portion of the team closed out unsuccessfully." Order, 8/30/16, at 1. However, Father requested the opportunity to work towards reunification now that he has relocated to York County. As such, the August 30, 2016 order directed CYF to make "the referral for the [Catholic Charities] team to reopen with Father." *Id.* at 2. Further, the order directed that "[s]hould there be a delay in [Catholic Charities] starting, the Agency is to work with Father to arrange supervised visitation through the Agency." *Id.*

At the subject hearing one month later, on September 30, 2016, the court found that Catholic Charities reopened with Father on September 22, 2016, and that supervised visits with Child began on September 28, 2016. Order, 9/30/16, at 2; Attachment to 30-Day Expedited Status Review Hearing Order, 9/30/16. In addition, the court found that Father is employed full-time at Old Country Buffet. Order, 9/30/16, at 2. Thus, Father made progress in one month by reopening with Catholic Charities, having a supervised visit with Child, and working full-time.

With respect to housing, Father's counsel stated during the subject proceedings that Father resided with his aunt, which he stated was not appropriate for reunification with Child. N.T., 9/30/16, at 9. However, Father's counsel stated, "I believe Catholic Charities is going to be assisting with search[ing] for appropriate housing." *Id.*

In its Rule 1925(a) opinion, the trial court stated that, "while Father is making progress, the child cannot wait indefinitely on Father to become a resource." Trial Court Opinion, 11/10/16, at 3. We deem the court's conclusion unreasonable when Father was released from prison for five months before the subject proceedings; he relocated to York County upon his release from the halfway house one month before the hearing; and he was making progress in the permanency plan. Further, there is no record evidence that Child has any physical, emotional, or developmental special needs. Therefore, based on the totality of the evidence, we conclude that CYF failed to satisfy its burden of establishing that a change in goal would be in Child's best interest. As such, we conclude that the court abused its discretion in changing Child's placement goal. Accordingly, we reverse the order, and remand this matter to the trial court to issue an order establishing reunification with Father as Child's placement goal with a concurrent goal of adoption.

Order reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/11/2017

- 11 -